[Cite as *State v. Brock*, 2019-Ohio-3116.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-102 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-369 |
| | : | |
| DERRICK BROCK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of August, 2019.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. No. 0053392, 101 Southmoor Circle NW, Kettering, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** This case is before us on the appeal of Defendant-Appellant, Derrick Brock, from his conviction on two counts of trespassing in a habitation when a person is present or likely to be present. After a jury found Brock guilty as charged, the trial court sentenced him to a prison term of 18 months on each charge and imposed the terms consecutively, for a total prison term of 36 months.

**{¶ 2}** According to Brock, his conviction on one of the counts was against the manifest weight of the evidence and/or was based on insufficient evidence. For the reasons that follow, Brock's assignment of error is without merit, and the trial court's judgment will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** In June 2018, the State filed an indictment charging Brock with two counts of trespassing in a habitation when a person is present or likely to be present, in violation of R.C. 2911.12(B). The charges were both fourth degree felonies and arose from events that occurred during the early morning hours of May 30, 2018.

**{¶ 4}** Around 1:00 a.m. on that day, Springfield Police Officer Cody McFall was dispatched to a residence on Highland Avenue on a call from Andrew Y., who reported that an individual (Brock) was attempting to enter his residence through a window. McFall went to the residence, but was unable to locate Brock. Earlier that night, Brock had tried to enter Andrew's residence through a front door; on that occasion, Andrew called the police and told them that Brock was not allowed to be at his home. When the police arrived in connection with the earlier call, Brock was still at Andrew's residence.

The police knew Brock and did not arrest him. Instead, they told him to leave. As noted, Brock returned again at around 1:00 a.m. and attempted to enter through a window, but the police could not locate him at that time.

{¶ 5} Springfield Police Officer Kyle Sullivan had been involved in the initial call at the Highland Avenue residence. Later that night, Sullivan was dispatched to a residence on Warder Street concerning a burglary in progress. This location was about a block away from Andrew's address. When Sullivan arrived, he found the door open and went inside, with his gun drawn. No one was on the first floor, so Sullivan went upstairs, where he found the victim, Shelia T., and her two children, in a bedroom. Shelia was emotionally distraught, visibly upset, and shaking. The children were upset and huddled in a corner.

{¶ 6} At trial, Shelia testified that she had worked on May 29, 2018, and had picked up her son and daughter from their babysitter at around 10:30 p.m. She and her children came home, took showers, and began watching movies she had purchased. They were upstairs in Shelia's bedroom.

{¶ 7} Shelia said that she was new to the area, that no one had a key to her house, and that she never left anything unlocked. Because the downstairs windows had "screens", she usually never opened them. That evening, Shelia made sure everything was secure before going upstairs.

{¶ 8} While watching a movie with her children, Shelia fell asleep. The next thing she knew, she heard someone say, "Baby, baby." Transcript of Proceedings (Jury Trial) ("Tr."), p.105. Shelia woke up and saw a man (later identified as Brock) standing in the doorway of her bedroom, looking at her. Shelia then screamed to wake up her daughter,

and reached for her phone to call 911.

{¶ 9} Brock appeared to be under the influence of something. He seemed very confused and kept claiming that he was in Andy's house. When she grabbed the phone to call 911, Brock asked if she were calling the police. When she said yes, Brock took off. Shelia was able to give the police a description of Brock.

{¶ 10} Springfield Police Officer Brian Taylor also answered the 911 dispatch to Shelia's home. After receiving a description of the suspect, Taylor went to look for him and found a person about a block away who matched the description. Taylor brought the suspect (Brock) back to Shelia's home, where she identified him as the person who had been in her house.

{¶ 11} That night, the police took photos of Shelia's home. A north-facing window downstairs was ajar, and the blinds on the inside of the window had been pushed aside. Shelia indicated the window was closed when she went to bed. Inside the house, a loveseat next to the window had also been pushed aside. In addition, a door leading to the outside of the house was open, which, again, was not the way Shelia had left it before going upstairs.

{¶ 12} Outside, a bush with stickers or burrs was next to the open window. After Brock was apprehended, Officer Sullivan photographed burrs on Brock's pocket, left leg, and right shoe. *See* State's Exs. 10, 11, and 13. The burrs were consistent with those on the bush outside the open window.

{¶ 13} Brock was charged with two counts of trespassing in a habitation when a person is present or likely to be present. After Brock pled not guilty, a jury trial was held on August 20, 2018. The jury found Brock guilty of both charges, and he was sentenced

accordingly.   This appeal followed.

## II.   Manifest Weight and Sufficiency Challenges

{¶ 14} In a sole assignment of error, Brock contends that:

The Jury Verdict Was Against the Manifest Weight of the Evidence, and/or the Evidence Was Insufficient, as a Matter of Law, to Prove Appellant's Guilt Beyond a Reasonable Doubt on the Charge Set Forth in Count One of the Indictment.

{¶ 15} Count One of the indictment involved the charge related to Shelia's home. Brock has not contested the verdict on Count Two, which concerned the trespass into Andrew's residence.   In his sole assignment of error, Brock contends that the State failed to present sufficient evidence to establish that he knowingly trespassed when he entered Shelia's premises.   Alternatively, Brock argues that the jury lost its way when it found him guilty of the charge.   As support for these alleged errors, Brock relies on Shelia's description of him as very confused, on his statements that he thought he was in "Andy's" home (meaning a place where he had permission to enter), and on the fact that he called Shelia "baby," indicating that he mistook her for someone else.   Furthermore, Brock notes that he left as soon as he realized he was in the wrong place, i.e., when Shelia was calling the police.

{¶ 16} Before considering these points, we will briefly review the legal standards for challenges to the sufficiency and manifest weight of the evidence.   "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a

matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted). *Id.* at paragraph two of the syllabus.

{¶ 17} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. In this situation, a " 'court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. "The fact that the evidence is

subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 18} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501 (2d Dist.), ¶ 58; *State v. Putman-Albright*, 2d Dist. Montgomery Nos. 26679, 2016-Ohio-319, ¶ 19. As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 19} Another important point is that "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 20} "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an

opinion." *Id.* "Consequently, we defer more to decisions on what testimony should be credited, than we do to decisions on the logical force to be assigned to inferences suggested by evidence, no matter how persuasive the evidence may be." *State v. Brooks*, 2d Dist. Montgomery No. 21531, 2007-Ohio-1029, ¶ 28, citing *Lawson* at *4.

{¶ 21} In the case before us, Brock was charged with having violated R.C. 2911.12(B), which provides that "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

{¶ 22} The parties differ about the degree of culpability that applies to this charge. Brock contends that the evidence was insufficient because the State failed to prove that he knowingly entered the premises. In contrast, the State argues that a culpable state of recklessness suffices. However, at trial, the court instructed the jury by using "knowingly" as the standard. Tr. at p. 148. Unfortunately, no jury instruction conferences were recorded, and there is no indication that either side objected to the jury instructions at trial.

{¶ 23} Notably, R.C. 2911.12(B) does not contain a specific degree of culpability. In arguing that recklessness should be used, the State relies on R.C. 2901.21(B), which outlines procedures for deciding culpability states where statutes are silent. Based on the quoted language in the State's brief, the State is incorrectly relying on the former version of R.C. 2901.21(B), which was amended in 2014. *See* Am.S.B. No. 361, 2014 Ohio Laws File 194, effective March 23, 2015.

{¶ 24} The current version of R.C. 2901.21 states, in pertinent part, that:

(A) Except as provided in division (B) of this section, a person is not

guilty of an offense unless both of the following apply:

(1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;

(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the language defining the offense.

(B) When the language defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. The fact that one division of a section plainly indicates a purpose to impose strict liability for an offense defined in that division does not by itself plainly indicate a purpose to impose strict criminal liability for an offense defined in other divisions of the section that do not specify a degree of culpability.

(C)(1) When language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly.

* * *

(3) Division (C)(1) of this section does not relieve the prosecution of the burden of proving the culpable mental state required by any definition

incorporated into the offense.

{¶ 25} Before the amendments, the Supreme Court of Ohio had considered whether the State "must prove the culpable mental state of 'recklessness' in proving the force element R.C. 2911.02(A)(3) requires." *State v. Tolliver*, 140 Ohio St.3d 420, 2014-Ohio-3744, 19 N.E.3d 870, ¶ 7. In *Tolliver*, the defendant had been charged with robbery under R.C. 2911.02(A)(3), which required that he " 'in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, did recklessly use or threaten the immediate use of force against' " the victim. *Id.* at ¶ 2. The trial court did not instruct the jury about a mental state for the use of force, but did instruct the jury on the elements of theft, which included "the mental states of 'purpose' to deprive the owner of property or services and 'knowingly' obtaining or exerting control over the property or services without consent." *Id.* at ¶ 4, citing R.C. 2913.02(A). The defendant maintained that the court erred by failing to instruct on recklessness as to his use of force. *Id.* at ¶ 5.

{¶ 26} According to the court, the robbery statute (R.C. 2911.02) did not "explicitly or impliedly require proof of any culpable mental state for the force element in subdivision (A)(3)," although it did "require proof of culpability for other elements of the offense." *Id.* at ¶ 8. This statement was based on the fact that "Division A [of the statute] expressly predicates every robbery on the elements of a completed or attempted 'theft offense,' including all culpable mental states." *Id.* The court then observed that every robbery is predicated on a theft, which, as defined by R.C. 2913.02(A)(1), encompasses "the mental states of 'purposely' and 'knowingly.' " *Id.* at ¶ 9.

{¶ 27} In considering the issue, the Supreme Court of Ohio noted that "[t]he only way to read a culpable mental state where one does not exist is through R.C. 2901.21(B),

which applies only to those statutes that 'do [ ] not specify any degree of culpability.' " *Id.* at ¶ 11. At the time, R.C. 2901.21(B) contained the following language:

> When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

*Tolliver* at ¶ 14, quoting former R.C. 2901.21(B).

**{¶ 28}** This is the statutory language the State cited in its brief. *See* State's Brief at p. 5. Based on the wording of the former statute, the Supreme Court of Ohio concluded that:

> This text identifies two conditions that must exist before a court can read recklessness into an offense. First, the "section" defining the offense must not specify "any degree of culpability," meaning that the section does not already require proof of a culpable mental state for any element of the offense in any division or subdivision. R.C. 2901.21(B); *see also* [*State v.*] *Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, at ¶ 31 ("R.C. 2901.21(B) requires us to examine the entire section defining the offense, not merely a clause or subsection"); *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, ¶ 22 ("we need to determine whether the entire *section* includes a mental element, not just whether *division* (A)(6) includes such an element" [emphasis sic]). Second, the

section must not plainly indicate a purpose to impose strict liability.   R.C. 2901.21.

*Tolliver* at ¶ 15.

{¶ 29} The Supreme Court of Ohio acknowledged that its decisions had been " 'imprecise,' " and that R.C. 2901.21(B) had unnecessarily been applied to statutes that already included a culpable mental state. *Id.* at ¶ 17.   However, the court noted *Johnson's* clarification that R.C. 2901.21(B) does not cover situations where a statute "already specified a culpable mental state for one or more of the elements of the offense." *Id.*, citing *Johnson* at ¶ 40, 42.   As a result, the court concluded that R.C. 2901.21(B) would not apply because R.C. 2911.02 (the statute defining robbery) was predicated on a theft offense that included the mental states of "purpose" and "knowingly."   *Id.* at ¶ 18. The court, therefore, held that:

> R.C. 2901.21(B), the statute for determining whether an offense imposes strict liability or requires proof of recklessness, applies only if "the section defining an offense does not specify any degree of culpability."   If the section already requires proof of a culpable mental state for any element of the offense in any division or subdivision, R.C. 2901.21(B) does not apply, and the state need prove culpability only as specified in the section. Because R.C. 2911.02 defines every robbery to include the culpable mental states of the predicate theft offense, R.C. 2901.21(B), which applies only when a mental state is not specified in a section defining an offense, does not apply, and the state need not prove a culpable mental state with respect to the force element in R.C. 2911.02(A)(3).

*Id.* at ¶ 23.

{¶ 30} The decision in *Tolliver* was issued on September 2, 2014. A few months later, in December 2014, the General Assembly amended R.C. 2901.21 and R.C. 2901.22, and enacted R.C. 2901.20. According to the preamble of the bill, the amendments to existing statutes and enactment of the new statute were intended "to clarify when strict criminal liability is imposed or a degree of culpability is required for the commission of an offense, to modify the concept of acting recklessly, and to require that future acts creating criminal offenses specify the requisite degree of culpability." Am.S.B. No. 361, 2014 Ohio Laws File 194. To that end, newly-enacted R.C. 2901.20(A) provided that "[e]very act enacted on or after the effective date of this section that creates a new criminal offense shall specify the degree of mental culpability required for commission of the offense. A criminal offense for which no degree of mental culpability is specified that is enacted in an act in violation of this division is void." *Id.* R.C. 2901.21 was also substantially amended.

{¶ 31} The General Assembly did not indicate whether the amendments were intended to affect the prior decision in *Tolliver*. At times, the General Assembly has included language in legislation indicating its intent to reject certain Supreme Court decisions. *E.g.*, Uncodified law in Sub.S.B. No. 20, 2005 Ohio Laws File 8, Section 3 (indicating intent to "prospectively overrule" the decision of the Ohio Supreme Court in *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845). However, the legislature did add R.C. 2901.21(C)(3), which states that "Division (C)(1) of this section does not relieve the prosecution of the burden of proving the culpable mental state required by any definition incorporated into the offense." Our reading of this is that

whether strict liability or recklessness applies under R.C. 2901.21(C)(1), the State must still prove any other culpable states of mind. In *Tolliver*, that meant that the State was required to meet the culpability burden established by the predicate theft offense. *Tolliver* at ¶ 23. However, Tolliver's reasoning was somewhat different, in that if other culpable states of mind existed, R.C. 2901.21(B) [now R.C. 2901.21(B) and (C)(1)] would not apply.

{¶ 32} We have reviewed the cases that have been decided since the 2014 amendments. We have not found any case discussing *Tolliver* in any pertinent fashion, i.e., with respect to whether the amendments affect *Tolliver's* analysis. In one case, the Sixth District Court of Appeals considered whether the State was required to prove culpability about the age of a victim where the defendant was charged with one count of theft from an elderly person in violation of R.C. 2913.02. *State v. Kraus*, 2016-Ohio-8003, 74 N.E.3d 880, ¶ 1 (6th Dist.). While the court of appeals cited the current form of R.C. 2901.21 in a footnote, it did not discuss it or any effect of the amendments. Instead, the court simply concluded, based on *Tolliver*, that the criminal theft statute already required proof of culpable mental states and that "R.C. 2901.02(B)" did not apply. *Id.* at ¶ 27-28.

{¶ 33} In another case decided after the amendments, the First District Court of Appeals applied R.C. 2901.21(C)(1) and imposed a standard of recklessness to a case involving R.C. 2911.01(A)(3) (aggravated robbery). *See State v. Morris*, 1st Dist. Hamilton No. C-150421, 2016-Ohio-5490, ¶ 11. The statute on aggravated robbery, like R.C. 2911.02(A)(3) (the robbery statute considered in *Tolliver*), is silent as to culpability and has theft as a predicate offense. As a result, *Morris* is inconsistent with *Tolliver*.

However, *Morris* did not mention either *Tolliver* or the amendments to R.C. 2901.21.

**{¶ 34}** In the case before us, trespass was the predicate offense for the charged offense. Under R.C. 2911.21(A)(1), a trespass occurs when persons, "without privilege to do so," "[k]nowingly enter or remain on the land or premises of another." This is the definition the trial court used in instructing the jury. Tr. at p. 148. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Again, the trial court used this definition when it instructed the jury. Tr. at p. 148.

**{¶ 35}** Consequently, because the court subjected the State to the higher burden of proof at trial, we need not resolve any issues pertaining to whether the 2014 amendments resulted in any change to the *Tolliver* analysis. Furthermore, regardless of the standard used, the jury verdict was not against the manifest weight of the evidence. As we mentioned, this conclusion subsumes the issue of sufficiency.

**{¶ 36}** The evidence presented at trial indicated that Brock entered Shelia's residence without privilege to do so. Shelia did not know him and had secured her home before retiring with her children for the night. Brock used stealth to enter, by opening a downstairs window and climbing through the window into the house.

**{¶ 37}** Concerning whether he "knowingly" did these things, Brock contends that he was confused, believed he was in "Andy's" house, and had no idea that he had entered a place where he had no right to be until Shelia said she was calling the police.

**{¶ 38}** These arguments are without merit. Normal requests for admission

involve knocking at the front door or ringing the doorbell, and waiting to be admitted, not sneaking in through windows in the middle of the night. Furthermore, even if one assumes that Brock thought he was entering "Andy's" home, the only evidence about anyone with that name (Andrew), was that Andrew clearly told Brock that night that he was not allowed in his house. In fact, when the police were called to Andrew's home earlier that evening, they also told Brock to leave. Brock, therefore, would have had no basis for believing that he was allowed to enter Andy's house.

**{¶ 39}** According to Shelia, Brock appeared to be under the influence. However, "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." R.C. 2901.21(E); *State v. Stockhoff*, 12th Dist. Butler No. CA2001-07-179, 2002 WL 449532, *2 (Mar. 25, 2002), (rejecting defendant's argument that he could not be guilty of burglary because he could not form the requisite intent due to voluntary intoxication). *See also State v. Shah*, 2d Dist. Montgomery No. 25855, 2014-Ohio-1449, ¶ 54 (defendant in sexual imposition case could not use voluntary intoxication to negate his mental state).

**{¶ 40}** In light of the preceding discussion, the judgment was not against the manifest weight of the evidence, nor was it based on insufficient evidence. Accordingly, Brock's sole assignment of error is overruled.

### III. Conclusion

**{¶ 41}** Brock's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

John M. Lintz
Jeffrey T. Gramza
Hon. Douglas M. Rastatter