**[Cite as *State v. Jones*, 2020-Ohio-3986.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28618 |
| | : | |
| v. | : | Trial Court Case No. 2019-CRB-1309 |
| | : | |
| BARRY JONES | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 7th day of August, 2020.

. . . . . . . . . . .

MATTHEW KORTJOHN, Atty. Reg. No. 0083743, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

REBECCA BARTHELEMY-SMITH, Atty. Reg. No. 0003474, 7821 North Dixie Drive, Dayton, Ohio 45414
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Barry Jones, appeals from his conviction of trespass. Jones contends that his conviction was against the manifest weight of the evidence. In addition, although not asserted as a separate assignment of error, he raises the issue of sufficiency of the evidence. For the reasons discussed below, we conclude that the assignment of error is without merit. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 2} On March 31, 2019, a criminal complaint was filed in Fairborn Municipal Court, alleging that Jones had committed trespass, a fourth-degree misdemeanor. After Jones pled not guilty, the case was tried to the court, which found Jones guilty as charged. The court then sentenced Jones to 30 days in jail, with credit for one day served, and suspended the remaining 29 days. The court also imposed $250 in fines and court costs, but suspended $150 of the costs. Jones then timely appealed to our court.

## II. Manifest Weight Challenge

{¶ 3} Jones's sole assignment of error states that:

The Lower Court Erred in Finding Barry Jones Guilty of Trespass Which Was Against the Manifest Weight of the Evidence.

{¶ 4} Under this assignment of error, Jones contends that his conviction was against the manifest weight of the evidence because the complainant's testimony was not believable. According to Jones, the more reasonable version of events was the one he told at trial. Jones also contends that the conviction was not supported by sufficient

evidence, but he does not specify why this is the case.

{¶ 5} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In this situation, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted). *Id.* at paragraph two of the syllabus.

{¶ 6} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. In this situation, a " 'court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence

weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. " 'The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence.' " *State v. Brock*, 2019-Ohio-3116, 140 N.E.3d 1239, ¶ 17 (2d Dist.), quoting *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2013-CA-62, 2014-Ohio-3432, ¶ 24.

{¶ 7} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). Consequently, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 8} Furthermore, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 9} At trial, the State presented testimony from the following persons:

complainant "Donnita"; Dayton Police Officer Florijan Urekar, who was called to the scene on March 30, 2019; and Dayton Police Officer Joseph Ambrose, who had responded to the same address in December 2018. Jones testified on his own behalf and also presented testimony from his brother, Cory Driscoll.

{¶ 10} According to the evidence, Officer Ambrose was dispatched on December 9, 2018, to a home on Almore Street in Dayton, Ohio. The call concerned a domestic dispute. When he arrived, Donnita, Jones, and their daughter, Jane, were present.[1] Jones and Donnita were arguing, and Donnita said that she did not want Jones around the house or the kids anymore. Jones left the premises, and Officer Ambrose told him as he was leaving that if he returned to the residence, he would be arrested. Ambrose did not give Jones a written notice, nor did he tell him the length of the trespass order. Transcript of Proceedings ("Tr.") p. 81 and 83. Ambrose indicated that he does not usually tell people the length of a trespass order. People are supposed to stay away for one year unless the homeowner or business states otherwise. However, Ambrose did not tell Jones that. Tr. p. 83. He also did not recall if he used the word "trespass" that night, but said he always uses it. Tr. p. 135.

{¶ 11} After informing Jones that he had been trespassed and was not welcome back, Ambrose documented this by completing a field interview card in the police department's M.I.S. system. Thus, whenever another officer ran Jones's information, the officer could see the date and time of the prior contact, who wrote the interview card, and who trespassed Jones, with the phone number listed.

{¶ 12} Jones did not return to Donnita's house until March 30, 2019, which was the

---

[1] To protect the minor's privacy, we are substituting a pseudonym for her name.

weekend after Jane's birthday. Donnita was planning a birthday party for Jane for that weekend and texted Jones about it on March 29, 2019. In the text, Donnita stated that "It's important," "I need help for [Jane's] thing tomorrow," and "Call me back as soon as possible." State's Ex. 1, p. 1. Because Jones was out of town (he was a truck driver) and had a bad phone signal, he told Donnita he would try to call her.

{¶ 13} A few minutes later, Jones called Donnita. According to Donnita, she was not reaching out for Jones's help in setting up the party or decorating; she told Jones over the phone that she needed financial help. They also did not discuss the party. Instead, the conversation went sour because Jones criticized her parents. As a result, Donnita told Jones not to worry about helping her. Tr. at p. 19-20.

{¶ 14} According to Donnita, she did not talk to Jones thereafter before he arrived at the party the next day. She did talk with Jones's brother, Driscoll, who was coming to the party to bring some gifts. On the day of the party, Driscoll called to see what Jane would like for her birthday. Tr. p. 23 and 37. During the call, Driscoll reassured Donnita that she did not have anything to worry about because he and Jones were not even talking to each other at the time. Tr. p. 24.

{¶ 15} The testimony of Jones and Driscoll differed from that of Donnita. They both testified that Donnita called Driscoll's phone while they were at Walmart buying gifts for Jane. Tr. p. 88, 97, and 113. Jones stated that he talked to Donnita for a few seconds, and Donnita then put Jane on the phone to talk about what gifts Jane wanted. Tr. p. 112 and 113. According to Driscoll, Donnita knew he was with Jones because he told her. Tr. p. 90. After buying the gifts, Jones and Driscoll went to Donnita's house. Tr. p. 89 and 91.

{¶ 16} A dispute also existed about what occurred after the men arrived. Donnita testified that she saw Jones's truck pull up and realized that he and Driscoll were together. Donnita further stated that when the men came to the house, they let themselves in the front door rather than being admitted. In addition, Donnita said that she asked Driscoll why he had misled her. She also told Jones at least 50 times to leave. When Jones did not leave, Donnita called the police. She called from a different part of the house because she did not want Jones to know, since he would leave if he knew the police were coming. Tr. p. 29.

{¶ 17} Jones and Driscoll told a different story, claiming that Donnita came to the door and let them in the house. Tr. at p. 101. They also claimed that Donnita did not tell Jones to leave. Tr. p. 92 and 117. All three agree, however, that Jones and Driscoll stayed in the hall by the front door and did not go anywhere else in the house. Tr. p. 31, 40, 93, and 115.

{¶ 18} About 10 to 15 minutes after Donnita called, the police arrived. Although Jones said he would leave, the police arrested him based on the previous trespass. Tr. p. 32-33 and 62.

{¶ 19} Jones's account was that the December 2018 incident occurred when Donnita refused to give him his clothes and he called the police to come. Tr. p. 119. He also denied ever being told that he had been trespassed from the property, although he did acknowledge that he had been told not to come back. Tr. p. 118. Jones indicated that he was there on March 30 only to drop off gifts and pay for pizza, and that Donnita never told him to leave. Tr. p. 115 and 117.

{¶ 20} After the trial judge heard the evidence, she stated that the court had

listened to all the testimony and evaluated the credibility of the witnesses, and "of the three witnesses that testified, I just find all three of them [have] maginable [sic] credit in terms of credibility." Tr. p. 157. The judge then concluded that she did not have sufficient evidence to determine, beyond a reasonable doubt, that the December 2018 communication was enough to establish that Jones was not supposed to be at the premises. Tr. p. 158. However, the judge then concluded that under the essential elements of the crime, Jones clearly remained on the property once he was asked to leave. *Id.* In particular, the judge stressed that she believed Donnita's testimony that she asked Jones to leave. *Id.* The judge, therefore, found Jones guilty and imposed sentence as indicated above. Tr. p. 158 and 168-169.

{¶ 21} As noted, Jones was charged with having violated R.C. 2911.21(A)(3), which provides that:

(A) No person, without privilege to do so, shall do any of the following:

* * *

(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;

{¶ 22} Privilege, for purposes of the Revised Code, "means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status,

position, office, or relationship, or growing out of necessity." R.C. 2901.01(12).

{¶ 23} The court's conclusion at trial was that the State failed to establish the prior order as a required part of the crime with which Jones was charged, i.e., that Jones recklessly entered or remained on Donnita's property after notice of unauthorized access. In particular, the court concluded there may have been some confusion regarding the December 18, 2018 situation, and that the officer's notice was not the best way to handle things. Tr. p. 162. The court also said there may have been a better way of communicating the warning. Tr. p. 163.

{¶ 24} Nonetheless, the court found that the elements of trespass were proven and in the court's entry of judgment (rather than the transcript), the court stated that Jones had been found guilty of having violated R.C. 2911.21(A)(3). *See* Judgment, p. 1.

{¶ 25} Although the trial court was concerned with respect to the adequacy of the prior warning under R.C. 2911.21(A)(3), we have previously held (as the State notes) that "[t]he statute does not require that [a defendant] be given notice, prior to his entry into the [premises], that his invitation to use the premises may be revoked so as to make his continued presence unauthorized." *State v. Thomas*, 2d Dist. Clark No. 95 CA 22, 1995 WL 472152, *2 (Aug. 9, 1995).

{¶ 26} In *Thomas*, the defendant caused a scene at a Meijer store and was asked to leave, but he refused. After police officers arrived and calmed the defendant down, he left the store. He was then charged with a violation of R.C. 2911.21(A)(3). *Id.* at *1. In affirming the conviction for that charge, we rejected the defendant's argument that "the state was required to prove that he was given notice of restricted land use prior to his entry onto the premises." *Id.* at *2.

**{¶ 27}** In this regard, we observed that:

> The record supports the jury's finding that Thomas recklessly remained at Meijer after having been actually and personally told that his continued presence was unauthorized. The trial court did not err in overruling Thomas' motion for acquittal based on the state's alleged failure of proof. The plain language of the statute indicates that the state was not required to prove "prior notice of land restrictions" as an element of the offense.

*Id.* at *3.

**{¶ 28}** Thus, the trial court incorrectly concluded that the prior order was a required part of the crime. Under our decision in *Thomas*, the State was not required to prove the prior trespass notice. Instead, the State only needed to prove that Jones recklessly remained on the premises after he was told to leave. However, despite this error, the court correctly found Jones guilty of trespass, both in its oral discussion and in the judgment entry, where the court stated that Jones was guilty of having violated R.C. 2911.21(A)(3).

**{¶ 29}** In Ohio, "courts speak only through their journal entries." *Kaine v. Marion Prison Warden*, 88 Ohio St.3d 454, 455, 727 N.E.2d 907 (2000). *Accord State v. Smith*, 2d Dist. Montgomery No. 26217, 2015-Ohio-700, ¶ 10 ("a court speaks only through its journal entries, not through its oral pronouncements"). Consequently, the court's oral statement at trial does not control.

**{¶ 30}** The remaining issue, therefore, is whether the judgment was against the manifest weight of the evidence. We conclude that the judgment was not against the

weight of the evidence. This finding also disposes of the sufficiency argument.

{¶ 31} As a preliminary point, we note that Officer Urekar spoke with Jones on the front porch for several minutes on March 30, 2019. During this conversation, Jones asked if he was going to jail, and Urekar responded that if Jones had been trespassed, he was going to jail. Tr. p. 59. During the conversation, Jones also stated that he had been trespassed. *Id.* Urekar could not verify the prior trespass at that point, but a subsequent computer check revealed that Jones had previously been trespassed, and he was then arrested. Tr. p. 60-61.

{¶ 32} Thus, as background for the current trespass, Jones knew that he previously had been told not to come back to the property; in fact, he admitted this at trial. Tr. p. 118. In light of this background and the turbulent relationship between the parties, Jones acted recklessly in remaining on the premises after Donnita told him to leave.

{¶ 33} Notably, while the trial court did not find the parties credible in general, it did specifically find Donnita credible on the issue of whether she asked Jones to leave. Tr. 158. Since we defer to trial court decisions on credibility, we cannot find that the judgment was against the manifest weight of the evidence.

{¶ 34} Based on the preceding discussion, Jones's sole assignment of error is overruled.

## III. Conclusion

{¶ 35} Jones's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Matthew Kortjohn
Rebecca Barthelemy-Smith
Hon. Deirdre E. Logan